# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

United States of America,

                    Plaintiff,          Case No. 19-cr-20419

v.                                      Judith E. Levy
                                        United States District Judge
Ivan Roque-Cerda,
                                        Mag. Judge R. Steven Whalen
                    Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INFORMATION [15]

Defendant Ivan Roque-Cerda is charged with unlawful reentry under 8 U.S.C. § 1326(a). On August 27, 2019, he filed a Motion to Dismiss Information in which he challenges the validity of his expedited removal order from 2006 that serves as the basis for his § 1326(a) charge. (ECF No. 15.) Roque-Cerda relies on 8 U.S.C. § 1326(d) to collaterally attack that order. He contends that the order is fundamentally unfair because three defects in his 2006 expedited removal proceedings constitute due process violations and as a result he experienced prejudice. On October 30, 2019 and November 26, 2019, the Court held

hearings, took testimony, and heard oral argument on Roque-Cerda's motion. For the reasons set forth below, Roque-Cerda has not demonstrated that the expedited removal proceedings violated his due process rights in such a way that caused prejudice. His motion to dismiss is therefore denied.

## I.    Background

Roque-Cerda is thirty-six years old. He is a citizen of Mexico. (ECF No. 19, PageID.47.) Prior to his arrest by Customs and Border Protection (CBP) agents in June 2019, Roque-Cerda resided in Michigan with his wife and five children. His wife is a Lawful Permanent Resident; in 2006, she filed a petition under INA § 203(a)(2)(A) for a visa for Roque-Cerda as the spouse of an LPR. (ECF No.15-3, PageID.37.). All five of Roque-Cerda's children are United States citizens. (ECF No. 17, PageID.40.)

Over the past sixteen years, Roque-Cerda has encountered U.S. immigration officials at least six times. This case involves two of those encounters: the expedited removal proceedings from 2006 and the 2019 arrest that led to the charge in this case.

On September 29, 2006, Roque-Cerda was discovered at the San Ysidro, California Port of Entry attempting to cross the border concealed

in the back of a vehicle. (ECF No. 15, PageID.24.) On September 30, 2006, he underwent expedited removal proceedings. *Id.* CBP Officer Michael Tuttle conducted the proceedings and acted as the language interpreter. *Id.* Officer Tuttle questioned Roque-Cerda and prepared a two-page Record of Sworn Statement and a one-page Jurat for Record of Sworn Statement. *Id.* Roque-Cerda's name appears on both documents. *Id.* The Record of Sworn Statement includes a series of questions about Roque-Cerda's presence in the United States:

> **Q:** On what day did you attempt to come enter [sic] the United States?
> **A:** Last night
> **Q:** How did you attempt to enter the United States?
> **A:** I was hiding in a vehicle
> **Q:** Did you present any document to the officer in order to enter the United States?
> **A:** No
> **Q:** How much did you pay or were going to pay to be brought across the border in this manner?
> A: My brother told me he was going to pay about $200.00.

(ECF No. 15-1, PageID.35.) Roque-Cerda then stated that he reentered the United States to find work and rejoin his family in Pontiac, Michigan. *Id.*

The one-page Jurat for Record of Sworn Statement indicates that Roque-Cerda did not wish to add anything to the Sworn Statement.

> **Q:** Do you have any questions or is there anything else you would like to add?
> **A:** No.

(ECF No. 15-2, PageID.36.)

Officer Tuttle served Roque-Cerda with a Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b). (ECF No. 19-2, PageID.66.) Roque-Cerda received a "Notice to Alien Ordered Removed/Departure Verification," which he signed and finger-printed. (ECF No. 19-3, PageID.67.) On September 30, 2006, Roque-Cerda returned to Mexico on foot. (ECF No. 19, PageID.48.)

On June 6, 2019, ICE agents arrested Roque-Cerda in Macomb, Michigan after a brief foot-chase. (ECF No. 19, PageID.49.) On June 17, 2019, Roque-Cerda was charged with unlawful re-entry under 8 U.S.C. § 1326. (ECF No. 1.) On June 24, 2019, the United States filed the Information in this case. (ECF No. 9.) The Information lists Roque-Cerda's September 30, 2006 expedited removal order as the predicate immigration offense satisfying the elements of 8 U.S.C. § 1326(a). (*Id.* at PageID.13.)

On August 27, 2019, Roque-Cerda moved to dismiss the Information. (ECF No. 15.)

## II.  Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) permits parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A collateral attack under 8 U.S.C. § 1326(d) is such an issue. *See United States v. Garcia-Echaverria*, 374 F.3d 440, 445 (6th Cir. 2004).

A noncitizen charged with illegal reentry under 8 U.S.C. 1326(a) may only challenge an underlying removal order if they can show that "(1) the [noncitizen] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the [noncitizen] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *United States v. Estrada,* 876 F.3d 885, 887 (6th Cir. 2017) (quoting § 1326(d)). As the Sixth Circuit explains, "[t]o prove the fundamental unfairness of an underlying deportation order, a defendant must show both a due process violation emanating from defects in the underlying deportation proceeding and resulting

prejudice." *Id.* The noncitizen bears the burden of demonstrating a due process violation and prejudice. *Id.*

## III.   Analysis

The Court limits its analysis to § 1326(d)'s third prong. Because Roque-Cerda has not shown defects in the underlying expedited removal proceeding that constitute a due process violation resulting in prejudice, he cannot show that entry of the 2006 removal order was fundamentally unfair.

### A. Challenge to Expedited Removal Order

Before addressing the merits of Roque-Cerda's arguments, the Court must determine whether Roque-Cerda may challenge his underlying order of removal in the first instance. 8 U.S.C. § 1225(b)(1)(D) provides that "in any action brought against a [noncitizen] under section 1325(a) of this title or section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered [as a result of expedited removal proceedings.]" On its face, the statute strips the Court of jurisdiction to review Roque-Cerda's challenges to his 2006 expedited removal proceedings.

However, in *United States v. Mendoza-Lopez*, the Supreme Court held that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." 481 U.S. 828, 838 (1987). The Supreme Court's holding is at odds with the statutory language of §1225(b)(D)(1), which would deprive Roque-Cerda of any review of his expedited removal proceeding.

The government concedes that the holding of *Mendoza-Lopez* requires that Roque-Cerda be able to challenge his expedited removal order in this case. (ECF No. 19, PageID.50.) Because the parties agree on this issue, the Court need not address the constitutionality of 8 U.S.C. § 1225(b)(1)(D). Roque-Cerda is constitutionally entitled to meaningful review of his 2006 removal order; 8 USC § 1225(b)(1)(D) does not bar its review by the Court in this case.

## B. Alleged Due Process Violations

Although noncitizens undergoing expedited removal proceedings have only limited due process rights, they are not without any constitutional protection. While "[w]hatever the procedure authorized by Congress . . . is due process as far as a [noncitizen] denied entry is

concerned," *see Am.-Arab Anti-Discrimination Comm. v. Ashcroft*, 272 F.Supp.2d 650 (E.D. Mich. 2003) (citing *Shaugnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)), "[d]ue process always requires, at a minimum, notice and an opportunity to respond." *United States v. Raya-Vaca*, 771 F.3d 1195, 1204 (9th Cir. 2014) (citing *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). Procedures for expedited removal are laid out at 8 USC § 1225 and 8 C.F.R. § 235. However limited those procedures may be, Roque-Cerda was entitled to them; insofar as the Government's failure to follow those procedures deprived Roque-Cerda of notice or an opportunity to respond, that failure is contrary to the Constitution.

Roque-Cerda alleges that three defects in his 2006 expedited removal proceeding constitute due process violations: 1) he was not informed of the nature of the charges against him; 2) he did not have an opportunity to read his sworn statement or have it read to him; and 3) he was not advised about the discretionary relief of withdrawing his application for admission. (ECF No. 15, PageID.22.) For the reasons set forth below, Roque-Cerda's first and third claims fail: he has not shown that he was not informed of the nature of the charges against him, and

Sixth Circuit precedent holds that failure to be informed of discretionary relief cannot constitute a due process violation. However, Roque-Cerda has shown that he did not have an opportunity to read his sworn statement or have it read to him, constituting a due process violation.

### 1. Failure to be informed of charge of inadmissibility

Roque-Cerda initially alleged that he "does not appear to have been given adequate notice of the charges against him." (ECF No. 15, PageID.22.) His sole argument in support of his claim was that "Mr. Roque has indicated that he . . . was unaware of the nature of expedited removal proceedings." (ECF No. 15, PageID.29.) But Roque-Cerda also acknowledged that at the time he filed this motion, he "ha[d] no independent recollection of those proceedings." (ECF No. 15, PageID.24.) Absence of evidence cannot serve as evidence of absence. *See Wyson v. City of Health*, 260 Fed. App'x. 848 (6th Cir. 2008) ("[The plaintiff] admits that he cannot remember the events . . . . [He] cannot beat something with nothing.").

At the October 30, 2019 motion hearing, Roque-Cerda stated through counsel that upon further consideration, he could remember the 2006 expedited removal proceedings. The Court held an evidentiary

hearing on November 26, 2019, at which Roque-Cerda testified that he "was never advised of the nature of the proceeding against him and advised of the consequences of the proceedings." (ECF No. 34, PageID.291.) Roque-Cerda explained, regarding his earlier lack of memory, that "[i]t's just that my memory fails me a lot and I have to remember a lot so I can remember things." (ECF No. 32, PageID.236.) He had newfound recollection "because it comes to my mind, the girl who brought me in the car now, remembering how she was and everything." *Id.* The Court will consider Roque-Cerda's November 26, 2019 testimony over his earlier statement that he had no recollection of his 2006 removal proceedings; however, he has not shown a due process violation stemming from lack of notice of the charges against him.

Regulations governing expedited removal proceedings mandate that an immigration officer inform a noncitizen of the charges against them. Specifically, the regulations provide,

> The examining immigration officer shall advise the [noncitizen] of the charges against [them] on Form I–860, Notice and Order of Expedited Removal, and the [noncitizen] shall be given an opportunity to respond to those charges in the sworn statement. After obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining immigration official shall serve the [noncitizen]

with Form I-860 and the [noncitizen] shall sign the reverse of the form acknowledging receipt.

8 C.F.R. § 235.3(b)(2)(i).

Roque-Cerda appears to have been informed of the charges against him through the procedures proscribed by regulation. Officer Tuttle completed a Form I-860, received supervisory concurrence from Supervisory CBP Officer Karen Butler and CBP Chief M. Partida, and personally served Roque-Cerda on September 30, 2006. (ECF No. 19-2, PageID.66.) Roque-Cerda testified that he was given at least one piece of paper in his 2006 expedited removal proceedings, likely the Form I-860. (ECF No. 32, PageID.239.) Moreover, Roque-Cerda testified that immigration officials told him he was "present in the United States unlawfully" (ECF No. 32, PageID.229), and "to sign [papers] so [he] could be deported to Mexico." (ECF No. 32, PageID.240.) Neither party provided the Court with the reverse side of the Form I-860, so there is no evidence as to whether or not Roque-Cerda signed that form. In all other aspects, the expedited removal proceedings conformed to the regulatory requirements to advise Roque-Cerda of the charges against him.

The documentary evidence indicating that regulatory procedures were closely followed and Roque-Cerda's admissions that immigration

officials told him he was present unlawfully and would be deported foreclose a finding of a due process violation with respect to notice. *Cf. United States v. Barajas-Avarado*, 655 F.3d 1077, 1088 n.12 (9th Cir. 2011) ("Because the record is silent as to whether Barajas-Alvarado signed the back of the Form I–860 or was otherwise informed of the charges against him, Barajas-Alvarado did not carry his burden of proof on this claim and cannot establish the existence of a due process violation or prejudice.").

### 2. No opportunity to read his sworn statement or have it read to him

As with his notice claim, Roque-Cerda initially alleged that he could not recall whether he read his sworn statement or had it read to him. Although he argued in his motion that his due process rights were violated because he did not have "an opportunity to read or have read to him his sworn statement" (ECF No. 15, PageID.22), in the same filing he retreated from such a strong phrasing, writing that he "does not appear to have been given . . . an opportunity to read or have read to him his sworn statement" because "there is no indication that Mr. Roque read, or had read to him, the two-page Record of Sworn Proceedings." (*Id.* at PageID.22, 25.) By contrast, on November 26, 2019, Roque-Cerda

testified that "nobody read the papers to him." (ECF No. 32, PageID.226.) In light of supporting circumstantial evidence, the Court will consider Roque-Cerda's November 26, 2019 testimony over his earlier statements that he lacked recollection and find that Roque-Cerda's due process rights were violated because he did not receive an opportunity to read his sworn statement or have it read to him.

Regulations governing expedited removal mandate that:

> [T]he examining immigration officer shall create a record of the facts of the case and statements made by the [noncitizen]. This shall be accomplished by means of a sworn statement using Form I–867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act. The examining immigration officer shall read (or have read) to the [noncitizen] all information contained on Form I–867A. Following questioning and recording of the [noncitizen]'s statement regarding identity, [noncitizen]'s age, and inadmissibility, the examining immigration officer shall record the [noncitizen]'s response to the questions contained on Form I–867B, and have the [noncitizen] read (or have read to [them]) the statement, and the [noncitizen] shall sign and initial each page of the statement and each correction.

8 C.F.R. § 235.3(b)(2)(i).

Here, the expedited removal proceedings related to the production of a sworn statement appear to conform to the regulatory requirements. Officer Tuttle prepared a sworn statement on form I-867A and I-831

(Continuation Page). (ECF No.15-1, PageID.34–35.) Roque-Cerda's name is on both pages. *Id.* Roque-Cerda's Sworn Statement consists of twenty questions, the answers to many of which include detailed personal information but only two of which Roque-Cerda now contests. (ECF No. 15-1, PageID.34-35.) Officer Tuttle recorded Roque-Cerda's responses to four additional questions on Form I-867B, Jurat for Record of Sworn Statement in Proceedings. *Id.* at PageID.36. Roque-Cerda's name appears on the page. *Id.* This form shows that Roque-Cerda was given the opportunity to respond to this questioning. On the Form I-867B, Officer Tuttle recorded the following exchange:

> **Q.** Do you have any question[s] or is there anything else you would like to add?
> **A.** No

(ECF No. 15-2, PageID.36.)

However, the regulations mandate more than the creation of a sworn statement. Immigration officials must "have the [noncitizen] read (or have read to [them])" both the I-867A and the I-867B. 8 C.F.R. § 235.3(b)(2)(i). Failure to allow a person to read or have read to them their sworn statement is a violation of due process. *Raya-Vaca*, 771 F.3d at 1204-05. Roque-Cerda contends that he was never given the chance to

read his statement or have it read to him. He points to three pieces of circumstantial evidence to support this claim:

### a. Error regarding Birthplace

The I-867A form lists the following exchange:

**Q.** In what City, State and Country were you born?
**A.** Aguascalientes, Zacatecas, Mexico

(ECF No. 15-1, PageID.35.)

Roque-Cerda testified that he was born in Ojocaliente, Zacatecas, Mexico, not Aguascalientes. When asked what Roque-Cerda would have done had someone read to him an answer stating he was from Aguascalientes, he said "I would have corrected it because that's in a different state." (ECF No. 32, PageID.228.)

### b. Error regarding Existing Petition

Roque-Cerda's 2006 I-67A form lists the following exchange:

**Q.** Do you have any applications or petitions pending with the Immigration and Naturalization Service?
**A.** No

(ECF No. 15-1, PageID.35.)

In April 2006, Roque-Cerda's wife, a United States citizen, filed an Immigrant Petition for Relative on behalf of Roque-Cerda pursuant to

INA § 203(a)(2)(A). (ECF No. 15-3, PageID.37.) Roque-Cerda testified that had immigration officers read the above exchange to him, "I would have corrected them. I would have said I have my petition." (ECF No. 32, PageID.320.)

### c. False Signatures

At the November 26, 2019 hearing, Roque-Cerda presented evidence that the signatures on the 2006 I-867A and I-867B forms differ from Roque-Cerda's signature as it appears on later immigration documents. (ECF No. 32, PageID.231-34.) Roque Cerda did not enter any of the supporting documents into evidence, nor does he pursue this argument in his supplemental brief. (ECF No. 34.) The Court considers this argument abandoned (noting, however, that Roque-Cerda testified that in 2006, immigration officials "just said I had to sign the papers because I had to go to Mexico and I signed them.") (ECF No. 32, PageID.226.) Moreover, to the undersigned, the signatures appear remarkably similar.

Regulations governing expedited removal proceedings provide that after a noncitizen reads their sworn statement (or has it read to them), "the [noncitizen] shall sign and initial each page of the statement *and*

*each correction."* 8 CFR §253.3 (b)(2)(i) (emphasis added). Had Roque-Cerda been allowed to read his sworn statement or have it read to him, he would have corrected the immigration officials with respect to his hometown and his outstanding visa petition. Regulations would have required immigration officers to make those corrections on the form itself, and Roque-Cerda would have been required to initial them. As the I-867A Form shows, these corrections were not made. The Court finds this sufficient evidence to demonstrate that Roque-Cerda was not given the opportunity to read his sworn statement or have it read to him. This constitutes a due process violation, as Roque-Cerda did not receive the constitutionally required opportunity to respond to the charges against him.

### 3. Failure to be informed about discretionary relief

Roque-Cerda's third claim is that the government's failure to inform him of available discretionary relief constitutes a due process violation. His initial motion stated that "he was not informed of his right to withdraw his application for admission" and that "[t]here is no indication that Mr. Roque . . . was advised that he could withdraw his application for admission and return to Mexico voluntarily." (ECF No. 15,

PageID.22, PageID.25.) On November 26, 2019, Roque-Cerda testified that he was unaware of the availability of discretionary relief. (ECF No. 32 PageID.244.) However, even if Roque-Cerda was not informed of the availability of discretionary relief, this does not constitute a due process violation.

Regulations provide that the "Attorney General may, in [their] discretion, permit any [noncitizen] applicant for admission to withdraw [their] application for admission in lieu of removal proceedings under . . . expedited removal under section 235(b)(1) of the act." 8 C.F.R. § 235(4). Withdrawal of an application for admission is purely discretionary: "nothing in this section shall be construed as to give a [noncitizen] the right to withdraw [their] application for admission." *Id.*

Roque-Cerda argues that "it is a violation of due process for the officer to fail to advise a [noncitizen] of the possibility of withdrawing his application for admission." (ECF No. 15, PageID.29.) In his initial motion, Roque-Cerda cites to *Raya-Vaca*, 771 F.3d at 1204, to support his contention. (*Id.*) But as Roque-Cerda acknowledges, "the Sixth Circuit does not agree with the Ninth Circuit that a failure to inform a [noncitizen] of potential eligibility of discretionary relief, such as

withdrawing an application for admission, constitutes a violation of due process."[1] (ECF No. 15, PageID.29) (citing *United States v. Estrada*, 876 F.3d 885, 888 (6th Cir. 2017)). In *Estrada*, the Sixth Circuit went even further than merely disagreeing with the Ninth Circuit; the court endorsed the approach of seven other Circuit Courts to hold that "a [noncitizen] has no constitutional right to be informed of eligibility for, or to be considered for, discretionary relief." 876 F.3d at 888. This Court is bound to follow Sixth Circuit precedent; that precedent dictates here that Roque-Cerda has not, and cannot, demonstrate a due process violation from the failure to be informed of the availability of discretionary relief. No statutory or regulatory authority or caselaw suggests otherwise.

Because Roque-Cerda has shown that his lack of opportunity to read his sworn statement or have it read to him violated his due process rights, the Court will next address the question of whether that violation resulted in prejudice.

---

[1] In *Estrada*, the Sixth Circuit did not cite to *Raya-Vaca*. 876 F.3d 885. Instead, the court declined to follow the Ninth Circuit's holding in *United States v. Lopez-Velasquez*, 629 F.3d 894, 897 (9th Cir. 2010) (en banc), that noncitizens have a due process right to be informed of the availability of discretionary relief. 876 F.3d at 888. The Sixth Circuit has not addressed *Raya-Vaca*'s holding on which the Court relies above, namely that failure to allow a noncitizen to read their sworn statement or have it read to them constitutes a due process violation.

## C. Prejudice

Roque-Cerda must show that his 2006 proceedings included defects rising to the level of a due process violation and resulting prejudice. *United States v. Estrada*, 876 F.3d 885, 887 (2017).

The parties disagree about the standard to be applied. Roque-Cerda argues that he need only show that but for the due process violations, he had "plausible grounds for relief." *United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1085 (9th Cir. 1996). The Government argues that the Court should follow the Tenth Circuit, which requires a noncitizen to show a "reasonable likelihood" that but for the due process violations, the outcome of the proceeding would have been different. *United States v. Aguirre-Tello*, 353 F.3d 1199, 1208 (10th Cir. 2004).

Sixth Circuit precedent supports applying a "reasonable probability" test. In *Mendoza-Garvia v. Barr*, the Sixth Circuit held that to prove prejudice, noncitizens alleging due process violations in immigration proceedings "must show that [their] 'claims could have supported a different outcome.'" 918 F.3d 498, 508 (6th Cir. 2019) (citing *Sako v. Gonzales*, 434 F.3d 857, 864 (6th Cir. 2006); *Jashari v. Sessions*, 722 F. App'x 481, 493 (6th Cir. 2018)). The court noted that this standard

mirrors the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and *Brady v. Maryland*, 373 U.S. 83 (1963), both of which adopt a "reasonable probability" test for prejudice. *Id.* at n.2. The *Mendoza-Garcia* court recognized that this standard is consistent with the approach employed by other circuits. Indeed, the First, Second, Third, Fourth, Fifth, and Eighth Circuits also apply the "reasonable likelihood" test. *Aguirre-Tello*, 353 F.3d at 1208 (collecting cases). Therefore, the question is whether Roque-Cerda has shown that there is a reasonable probability that had he read his sworn statement or had it read to him, he would have received discretionary relief in the form of withdrawal of his application for admission. Because there is no causal relationship between the due process violation that occurred and Roque-Cerda's failure to receive discretionary relief, he cannot make that showing.

As an initial matter, the Government contends that Roque-Cerda was not an applicant for admission, and therefore he was not eligible for withdrawal of his application. 8 U.S.C. § 1225 provides that "[a]n arriving [noncitizen] who is a stowaway is not eligible to apply for admission or to be admitted." 8 U.S.C. § 1225(a)(2). 8 U.S.C. § 1182 further provides that "[a]ny [noncitizen] who is a stowaway is inadmissible." 8 U.S.C. §

1182(a)(6)(D). The parties do not contest that on September 29, 2006, Roque-Cerda was "attempting to enter the country concealed in the back of a vehicle" when he was discovered by immigration officials. (ECF No. 15, PageID.24.) The government cites to a 1952 case for the proposition that there is "no statutory definition of stowaway." *Zacharias v. McGrath*, 105 F.Supp. 421, 427 (D.D.C. 1952). The Government then cites to Webster's Dictionary, which defines "stowaway" as "to secrete oneself aboard a vehicle as a means of obtaining transportation," to conclude that Roque-Cerda satisfies the legal definition under 8 U.S.C. § 1225(a)(2). (ECF No. 19, PageID.59.)

But Chapter 8 of the United States Code defines "stowaway," and Roque-Cerda does not fall under that definition. 8 U.S.C. § 1101 provides that "[a]s used in this chapter . . . [t]he term 'stowaway' means any [noncitizen] who obtains transportation without the consent of the owner, charter, master or person in command of any vessel or aircraft through concealment aboard such vessel or aircraft." 8 U.S.C. § 1101(a)(49). Nothing in the record suggests that Roque-Cerda concealed himself without the consent of the driver of the vehicle in which he hid. Indeed, Roque-Cerda's admission that his brother was going to pay someone

approximately $200 dollars to bring Roque-Cerda across the border suggests that the driver of the vehicle consented to Roque-Cerda's presence on board. (ECF No. 15-1, PageID.35.) Roque-Cerda's testimony confirms this to be the case: "The lady who brought us, she put me in the trunk and she said not to make noise to bring us over." (ECF No.32, PageID.225.) Although Roque-Cerda may quite literally have been stowed away in his journey across the border, this does not, for purposes of immigration law, make him a "stowaway."

However, despite Roque-Cerda's eligibility for discretionary relief, nothing in the record suggests that he would have asked for it had he read his sworn statement or had it read to him. Roque-Cerda testified that in 2006, he did not know that he could ask for discretionary relief. (ECF No. 32, PageID.244.) Roque-Cerda testified that had an immigration officer read his sworn statement to him, he would have consulted with an attorney. (ECF No. 32, PageID.243.) Roque-Cerda has not provided, and the Court is unable to find, any legal authority that noncitizens in expedited removal proceedings have a right to counsel. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2017) (holding that noncitizen's "claim that he was denied his right to counsel

[in expedited removal proceeding] is meritless on its face"). In fact, Roque-Cerda testified that he asked to call an attorney, but immigration officials did not let him make a telephone call. (ECF No. 32, PageID.243.)

Nor is there evidence that had the two factual errors pertaining to Roque-Cerda's hometown and visa petition been corrected, immigration officials would have considered Roque-Cerda for discretionary relief. Roque-Cerda testified that had he read his sworn statement or had it read to him, he would have corrected immigration officers with respect to his hometown and his wife's visa petition on his behalf. (ECF No. 32, PageID.320, PageID.228.) On cross-examination, Roque-Cerda's lawyer asked Officer Tuttle if having a Lawful Permanent Resident or citizen relative in the United States could change the expedited removal process for a noncitizen. (ECF No. 32, PageID.267-68.) Officer Tuttle testified that

> "I'm not sure if it would change the expedited removal proceedings. But potentially I'm not sure. That would be something I would have to refer to a supervisor or someone with more dense knowledge than me if that information were to become known."

*Id.*

Officer Tuttle's uncertain and noncommittal testimony is not sufficient to show prejudice under a "reasonable probability" test, as it cannot bridge the gap between allowing Roque-Cerda to read his sworn statement and his subsequent consideration for discretionary relief. Even if Officer Tuttle had referred Roque-Cerda's case to a supervisor, no legal authority would have mandated that the supervisor consider Roque-Cerda for withdrawal of his application. At most, Officer Tuttle's testimony raises the theoretical possibility that Roque-Cerda would have been considered for such relief by Officer Tuttle's supervisor, but that possibility is too speculative to show prejudice for the purposes of § 1326(d). For this reason, Roque-Cerda has not shown he experienced prejudice as a result of the Government's failure to allow him to read his sworn statement or have it read to him.

Because Roque-Cerda cannot show a causal link between the due process violation and the Government's failure to consider him for discretionary relief, the Court will not assess whether, had Roque-Cerda been considered for relief, he would have been likely to receive it. *See* INS Inspector's Field Manual § 17.2(a), at 2007 WL 7710869 (Apr. 19, 2007)

(outlining six factors to weigh when considering noncitizen's eligibility for withdrawal of application for admission).

Roque-Cerda's situation is compelling in so many ways, but he does not satisfy the requirements under § 1326(d) to challenge the entry of his 2006 expedited removal order in this case.

## IV.    Conclusion

For the reasons stated above, Roque-Cerda's Motion to Dismiss Information is **DENIED.**

IT IS SO ORDERED.

Dated: January 3, 2020          s/Judith E. Levy
Ann Arbor, Michigan             JUDITH E. LEVY
                                United States District Judge


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, January 3, 2020, using the Electronic Court Filing system and/or first-class U.S. mail.

s/William Barkholz
Case Manager